Mr. Baum You may proceed Good morning, Mayor, Police, and Court My name is Warren Baum and I represent the Appellant Misdemeanors Appeal With me today is my colleague Bob Giavotto This appeal involves a dispute over the interpretation of a release-contained agreement Under which Ford donated the patents and sued to Misdemeanor Exchange For obtaining a charitable tax deduction on the donated items Despite taking such a tax deduction, and despite voluntarily executing A licensing agreement regarding the donated patents in 2006 Ford now contends that it is entitled to make, use, or sell the donated patents With the community, and that patents are sued, that the claims are released But you can use and sell products that are covered by the donated patents Yes, Your Honor Now in writing, Ford's motion is dismissed The trial court erroneously ruled that the release unambiguously applied To NISTAC's patent infringement action against Ford as a matter of law And rejected NISTAC's alternative interpretation of the release To exclude such a claim as unreasonable as a matter of law However, based on black-letter Michigan law, the party's state intent And the agreement's plain language, NISTAC's interpretation of the release To exclude its patent infringement action against Ford The counsel, paragraph 3.3, says Exclude by reason of the practice of Ford's patent rights by NISTAC, its licensees, or transfers It doesn't say practice of the patents, it says practice of the patent rights Yes, Your Honor And I think that the only way to make any sense at all of that paragraph And it is poorly written There are certainly better ways that this paragraph could have been written That would have avoided all of this litigation Despite that, I don't see a way to read it As saying it would apply to practice of the patent rights I.e. suing someone for patent infringement Yes, Your Honor, let me try to explain to you the reasons why the district courts And Ford's interpretation of that particular provision of the reason in this case I think the first thing you need to look at is the cardinal rule of construction Contract construction under Michigan law Is that you have to adopt construction of the statute What do you want me to read this to say? If not practice of patent rights Your Honor, I believe practice under the way it's used in the contract Consistent with the parties intent Should be construed to refer simply to the making, using, or selling This doesn't say practice of the patent It says practice of the patent rights Yes, Your Honor, and if you look at paragraph 2.1 Of the donation agreement Which is on page 164 of the appendix The reason why we refer to the practice of the donated technology Of making, using, and selling the donated technology in our brief Which the other side takes it to task for Is that if you look at the definition of the phrase Donor's patent rights It refers to the donor's entire right, title, and interest Into the donated technology That's why I think it's fair to read the phrase Practice of the donor's patent rights in paragraph 3.3 To mean making, using, or selling the donated technology But that clause clearly means that Ford can't sue this stack In any way over the patents They've transferred all their rights So what can the other clause mean Except that Ford is also protecting itself? Well, paragraph 3.1 And I guess maybe this is how I interpret the court's question Paragraph 3.1, paragraph 3.2, and paragraph 3.3 All need to be construed together And I think that if you look at them collectively They all kind of deal with different protections That Ford is being granted under different specific circumstances If you look at paragraph 3.1 Paragraph 3.1 deals with the situation Where Ford is protecting himself Against an indemnity-type claim by NISTAC In the event that NISTAC is sued for patent infringement By a third party for making, using, or selling the donated technology Paragraph 3.2 deals with situations Where perhaps a product's liability-type claim May be brought against NISTAC Based on its making, using, or selling of the donated technology Paragraph 3.3 doesn't deal with indemnity issues But deals with a release-type protection And it's kind of a catch-all provision In the sense that it covers other situations Not specifically cover paragraph 3.1 and paragraph 3.2 I'm still having trouble with 3.3 in the language Because I just don't understand how this paragraph can be read As making any sense at all If it's not pertaining to patent rights Rather than make, use, or sell Because look at who's being released from what And who owned what at the time the contract was formed So at the time the contract was formed Ford had patents And was donating them to NISTAC Or somebody else, and then they got to NISTAC So I took out donor and donee And inserted NISTAC and Ford in blocks here So it would help me understand what's going on And it says NISTAC The person who didn't own patents prior to this being signed Agrees to release Ford, its officer directors From any and all claims Which NISTAC might otherwise have against any of them By reason of the practice of Ford's patent rights by NISTAC Now if it was make, use, or sell How could NISTAC release Ford From making, using, or selling what's going on by NISTAC? For example, a situation where Again, say for example NISTAC is attempting to license, i.e. sell One of the, a product covered by the patents And attempted to license it, one of the inventors Of the donated patents comes forward and says Well, you don't have the right to do so Because we still, due to some undisclosed agreement Have an ownership interest in this patent So you can't do that This provision would then prevent NISTAC From going against Ford Filing a breach of contract or breach of title type action Based on those facts Paragraph 3.1 obviously deals with a situation Where NISTAC is sued by a third party for infringement of a patent I guess what I hear your question be is What claims does 3.3 purport to cover Based on NISTAC's making, using, or selling the donated patents And obviously it's difficult to tell what types of claims might come up in the future It's speculation, but one type of claim that we envision could come up That would be covered by paragraph 3.3 And that's not covered by 3.1 and 3.2 Is a situation, for example, where NISTAC is attempting to license The donated patents to a third party And it's attempting to sell the product or the donated patents I'm confused. You say this means making, using, or selling So licensing isn't making, using, or selling So how could that be covered by your definition of 3.3? Your Honor, I believe it would fall under the term selling Wait, licensing patent rights is the same thing as selling a product for purposes of... Well, selling the donated technology would encompass patents, correct, Your Honor? I'm sorry, I didn't hear you Selling the technology would encompass also selling the patent rights Or say, NISTAC was selling a product that was covered by Or attempting to license a product that was covered by the patents Now I'm really confused Because I thought that our precedent really clearly divided In terms of when you're talking about making, using, or selling I.e. for infringement purposes That is distinctly different from trying to attempt to sell your patent rights Via license or assignment Is that not correct? Your Honor, I think that may be correct But I think the point is that If perhaps that isn't the best example to use I think the basic point that we want to make Is that paragraph 3.3 cannot be disproved To include the claims based on the right to enforce the patent So it simply isn't consistent with the parties' intent In entering into the agreement I understand you saying that, but then If the parties had an intent I'm having trouble understanding how you would read this paragraph To jive with the intent you tell me that the parties had when they entered it Because your suggested interpretation is very strained And I can think of no example For which there would need to be a release of this kind Whereas their interpretation seems Imminently more plausible The kind of thing that might appear in these licenses all the time So this is why I'm trying to elicit from you What am I missing? And your Honor, I think we tried to answer your hand I know it's probably due to being dubbed the first time But paragraph 3.3 Basically, I think the purpose was to Kind of serve as a casual provision To cover circumstances not specifically enumerated in paragraph 3.1 And paragraph 3.2 And I think the reason why it's consistent with the parties' intent Is because of this If you interpret paragraph 3.3 To encompass potential patent infringement claims That MisTech may have served against Ford That effectively grants Ford Carte Blanche to make, use, or sell the donated patents With impunity Without having to pay the owner of the patents A reasonable royalty for that use That is inconsistent with the parties' intent Because one of the purposes For Ford's decision to enter into the donation agreement Was to be able to take a charitable deduction On the donation of those patents And in order to attain a charitable deduction on those patents It could not retain any substantial right, title, or interest in the patents Because if it did, under federal tax law This isn't an exclusive license You haven't argued to me that this amounts to Or that they're suggesting this amounts to an exclusive license And a bare license, we have held repeatedly Does not amount to the right title of a patent Because we encounter this all the time for standing purposes And so in our standing jurisprudence We always make it clear that a bare license wouldn't conflict With the title type of argument that you're making now So I don't see how you can say that since their intent Was to be able to take a tax deduction And a tax deduction can't be taken If they don't give away title I don't see how you can argue that reading 3.3 this way Somehow impugns that Your Honor, I think the orthopharmaceuticals case That we cite in the brief stands for the proposition Which supports our argument that The release in this case effectively constitutes A de facto license in the sense that it allows Ford to make, use, or sell the donated patents A right that it otherwise wouldn't have But it really is less important Than what label you attach to the retained right that Ford has As compared to what the actual nature of that retained right is And the nature of that retained right is that Ford has the right to make, use, or sell the patents With impunity And under the IRS rulings and other authorities That we cited in our opening and reply briefs That is deemed to be a substantial enough right To preclude a charitable deduction for that donation Mr. Kelly, you cite, I think, the 2004 IRS notice Which is pretty explicit The point that you're now making Which is to say if I hold back a license Even if not an explicit license But I donate to you my patent That I don't get a deduction Is that... Am I understanding that to be IRS's position? Yes, Your Honor. In the authority that we cited Alright. Now, was that IRS's... Because that's the 2004 IRS notice This contract was for 2000? Yes, the donation was 2000 What was the state of the law prior to 2000, if you know? Your Honor, I was not able to find authorities In 2000 or prior to 2000 that addressed the issue But I think that the basic principles outlined in the 2004 IRS representative rulings and orders I think are easily applicable to the case tomorrow Well, they may be in the sense that If this contract were to come up now And Ford were to say Well, we're holding back a non-exclusive license That the IRS would not let them take the deduction That seems pretty clear Unless... Yes, Your Honor, but I... Those accounts will persuade us in the country But to the extent that we're looking for Something that gives us guidance As to what the words should be construed to mean Your Honor The fact that there was not previous law to that effect From the IRS may be part of it Yes, I think the basic principles have not changed And I guess we're not different prior to 2000 And haven't changed since And since the IRS consistently stated that If a taxpayer makes a donation And seeks to claim a deduction For that donation It cannot retain a substantial interest In the donated items Any retained interest can only be the minimum But I suppose until 2004 So the question is what substantial interest then? Your Honor, I have not looked under analogous circumstances Where it doesn't... I looked specifically for authority Related to donation of patents But Your Honor, I've obviously More than willing to submit additional authority To see whether the IRS has considered The issue of analogous circumstances And the authorities that cited One of the analogous circumstances they cited Is where, say for example A taxpayer donates the rights to a movie But continues to retain the right To stream that movie Or market or commercialize that movie There may be other analogous circumstances To the patent donation in this case Okay, thank you Mr. McFarland Since your time will restore Three minutes of rebuttal time for you And if you'll give Mr. Burrish An additional three minutes Please Your Honors, good morning May it please the Court My name is Eric Burrish And I represent the Apple The Apple lead Ford Motor Company In this case Let me start out by saying That I think there are two things That Ms. Dax replied, rephrased That Ford has not had a full opportunity To address And I'm going to focus on Those two points right off the start The two points are That Ms. Dax proposed Counterinterpretation of Provision 3.3 Is per se unreasonable Because it takes out the term patent rights And inserts another expressly defined term From the contract donated technology You take out one expressly defined term And insert another That violates at least two Fundamental construction canons From Michigan Contract Interpretation Law To the extent that this is abysmally drafted Why don't we construe against you? You're donating You're setting up the terms of that donation Why don't we construe that against you? Because it's apparently rare 3.3 is As Judge Moore said It could have been drafted better There's no question about that The question is whether 3.3 is ambiguous Or unambiguous If 3.3 is unambiguous The doctrine of contra pro forma There, thank you Only applies to an ambiguous term If the terms of 3.3 are ambiguous Then the case should be remanded That's the question before the court Is it unambiguous or is it ambiguous If it's unambiguous You never get to that doctrine In the first instance But let me explain why 3.3 was written The way in the terminology That it was written in What 3.3 reflects is Did you write it? I'm sorry? Did you write it? I did not Okay, I was just wondering How defensive you were going to be about it So yeah, feel free to say Whatever you'd like about it What is going on there Is that the parties were intending To use a defined phrase Patent rights Donated patent rights And they were intending to do that In a very inclusive manner And I think the phraseology That you see there Was the party's attempt To incorporate that defined phrase From 2.1 We see that Patent rights is defined to be The entire right, title, and interest In and to the donated technology And the next sentence Expresses, states That assignment and contribution Includes the right to enforce So we know As a matter of law Under Michigan contract interpretation That the express definition Must control Another fact that I think We need to be very clear about Is that the phrase Donated technology Is another defined term In the contract In section 1.1 So we have two separately defined terms Now in this tax reply brief They say two very interesting things On case 22 They say In order for their interpretation to work Donated technology And patent rights are And I quote A distinction without a difference In other words They are the same thing That violates Michigan contract interpretation law For the simple reason That Michigan contract interpretation law Says You cannot render a term Surpluses or nugatory If two express definitions Mean exactly the same thing You have rendered At least one of those definitions Surpluses Secondarily On page 22 Of their reply brief NISTAC says And I Let me see if I can quote this That donated technology As used As they want to use in 3.3 Must exclude The right to enforce In other words They take out patent rights Insert donated technology And then explain That it must exclude The right to enforce But we have seen In 2.1 That the phrase Patent rights Expressly includes The right to enforce So NISTAC is asking this court In the context of a litigation Induced rewrite To expressly redefine the term That has already been defined In the contract It strikes me You can comment on this If you would But it strikes me That your problem Is not so much with The term patent rights As it is with the term practice If this clause 3.3 Had said That the donor Agrees to release The donor From all claims Which the donor Might otherwise have By reason of The donor's patent rights Then you'd be on It seems to me A very solid footing But it says The practice of The donor's patent rights And practice To an intellectual property lawyer Would seem to me To have a pretty Restrictive meaning And this I gather Was reviewed by Intellectual property lawyers This wasn't something Drafted by somebody In the real estate section I take it It's not in the record One way or another I can't speak to I thought there was Something in the material That suggested that In any event The Looking at Plain language In the context Within which it appears It seems to me That the word practice Suggests Something other than Enforcement So that's my problem With your Case It's not the patent rights It's the practice part And I think that comes in Right on the heart Of Ms. Dexart They say practice Is the key word When in reality It's the phrase Practice of the patent rights As your Honor Appropriately alludes to Practice of the patent rights Now let's start From the premise of patent rights That it expressly Includes the right to enforce That's defined in the contract We plug it into 3.3 So now we know That we are dealing With the right to enforce Now Ms. Dexart Invites this Court To take I believe you said A constrained or A technical view Of the phrase practice And I say fine I don't think That that's necessarily Or I do not believe That that's necessary Let's take practice As a general term We've said apply Carry out Those types of words And Ms. Dexart says Make use or sell Assuming for sake Of argument That Ms. Dexart is correct And it should be Make use or sell Then plug it in Make use or sell The right to enforce In context You're not going to Make the right to enforce You're not going to sell it But you can certainly Use the right to enforce So now we have a clause That says that Ford has a release When Ms. Dexart Uses the right to enforce There is no ambiguity there Which is why Ms. Dexart must take The next step And say Take out patent rights And put in Donated technology And furthermore Exclude the right to enforce That is expressly included By section 2.1 Again Michigan Contract law I want to get this Cite into the record The right to enforce She says Explicitly In 2.1 I'm sorry Yes your honor The right to enforce Okay Includes Sorry Assignment Contribution Includes the right to enforce Okay Assignment Contribution Assignment Includes the right to enforce The patent rights Correct But that's Not the same Saying that Patent rights Include the right to enforce I think In fact You could even say That it excludes The concept That patent rights Include the right to enforce Since the right to enforce Is Defined as something That's done with respect To the patent rights I think that's An interesting point I'm not sure I fully Attracted it Let me see if I can Paraphrase No it's It's actually It borders on Sophistry actually I was interested In the reaction I think That actually Is a fundamental point Because NISDAC Is again Excluding the right to enforce From patent rights And they're saying That patent rights Must be the right To make use Or sell the donated Technology But as this court Is well aware The patent rights Patent rights In general Cannot convey An affirmative right To do anything Patent rights Are not the right To make use Or sell Patent rights Are the right To exclude others From making use Of means selling And that is The very essence Of the right To enforce The patent rights So by using The phraseology Patent rights By specifically Calling out The right to enforce In 2.1 The intent Of section 3.3 Could not be more Clear It was Oh it sure could be Clear I understand That it could not Be more clear As a standard Phrase that lawyers Make about contracts But this That's Being serious here This is The problem is This is not It could not be Clearer Right And we can all Agree I think we can all Agree that you Could specifically State NISDAC Can't sue For And that would be More clear Right But if you do that The problem with Drafting contracts In that way And the reason People do not Draft contracts In that way Is as soon as You begin listing Specific rights Or specific Causes of action That are covered By for instance A release You have By negative Implication Omitted Any causes of action You don't express The state That's why you Take an all Stop there Any and all Claims Can't be brought Period Well any and all Claims is broad And the right to Enforce the patent Rights is broad That's the The breadth Of 3.3 I believe Is clear I'm just I'm contesting Whether it's difficult To draft A release Seems to me Like You and I Could sit down And do that In 20 seconds And we wouldn't Have to litigate For years And if that Were the standard For determining Whether or not There is an ambiguity Then there would Always be An ambiguity Because you will Always have Opposing counsel Coming in on The other side Of the case And saying We can dispute This or that Because a particular Phrase wasn't drafted As clear as it Could have been But Michigan law In all psychic Wharton cases Specifically said That the mere fact That a party Can introduce a dispute And say For instance That it could have been More clear Does not demonstrate An ambiguity On this If we can move For a moment To the tax Issue That is raised By the fact That the Memorandum Does reference For its intention To take a deduction Would you agree That the IRS material Cited in the Blueprint Specifically The IRS Notice 2004-7 Would disallow An ambiguity On the deduction In a case Where the Donor Retains A non-exclusive License To practice The invention I think According to the IRS regulations That were cited By NISAC And I agree That they were Not timely And I was Going to raise That point That you Raised already The fact Of the matter Is that If you have A retained Interest In the property That will have An impact On the deduction You mean Disallow I don't believe That's right I think you Can take Reduced deductions I think there Are a number Of various It's not an All or nothing Approach It depends On the rights That are being Retained But the Fundamental premise Of NISAC's Argument Is that Ford Retained An interest In the Non-exclusive License As I understand This notice The retention Of a Non-exclusive License As a Retention Of an interest And a Protection Against suit Is effectively The same thing As a Non-exclusive License And Ford's Pointed out In his brief Charter The distinction Between a Non-exclusive License And a release As this Is In the context I believe The Ortho Farm case Was comparing A non-exclusive License To a Covenant Not to sue For purposes Of standing There the Court found That a Covenant Not to sue Was not A property Interest In the Patent There was No retained Interest In the Patent And that's Where Ford Is In a Contractual Relationship With NIST Act Protects Only Ford Those are Different Types Of Provisions It's Not a Non-exclusive License How are Ford's rights Different In those Two cases I'm not Sure I Follow And again I think There's a Delay There's a Point that Doesn't Necessarily I understand You don't Think this Whole tax Debate is Really Terribly Germane To the Construction For an Important Reason Just to Finish the Point I'm Losing you About where You were Saying There's a Big difference Between Having A License To Practice The Patent Versus Having A Covenant Not To Sue For Practicing The Invention What's The Difference In Ford's Position In Those Two Situations If Ford has A License A Non-Exclusive License Then Ford Can Make You Yourself With Authority To Do That That Is Not An Act Of Infringement Because It Is A   Non-Exclusive License If Ford Has Do That That Is A Non-Exclusive License If Ford Can   Yourself With  To    Is Not An Act Of Infringement Because It Is A Non-Exclusive License If Ford Can Make You